2004 UT App 375

**Anthony HUEMILLER, Petitioner,**

v.

**OGDEN CIVIL SERVICE COMMISSION, Respondent.**

**No. 20010968–CA.**

Court of Appeals of Utah.

Oct. 28, 2004.

April L. Hollingsworth, Erik Strindberg, Lauren I. Scholnick, and Ralph E. Chamness, Stringberg & Scholnik, Salt Lake City, for Petitioner.

Stanley J. Preston, Judith D. Wolferts, and Camille N. Johnson, Snow Christensen & Martineau, Salt Lake City, and Doug Holmes, Ogden, for Respondent.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

## MEMORANDUM DECISION

ORME, Judge:

¶1 Anthony Huemiller appeals the decision of the Ogden Civil Service Commission (OCSC), which affirmed his termination from the Ogden City Police Department (OPD). Huemiller argues that substantial evidence does not exist to support the decision of OCSC and that the charges against him do not warrant the sanction of termination. We affirm.

¶2 "The Commission's findings ... must be supported by substantial evidence viewed in light of the whole record before us." *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 758 (Utah Ct.App. 1997). "We do not review the Commission's findings de novo or reweigh the evidence. Instead we defer to the Commission's findings on issues of credibility." *Id.* (internal citation omitted.).

¶3 OCSC's finding that Huemiller was aware of OPD's towing policy and nevertheless violated the policy in exchange for personal benefits from Ogden Autobody (OAB) is supported by OPD's general order number sixty-one and the supplement to general order sixty-one, which was addressed to all police personnel and reiterated OPD's towing policy; the memorandum from Chief Greenwood; the testimony of Officers Brady, Mills, and Lucero that they personally witnessed Huemiller violate OPD's policy; Huemiller's cellular telephone records; and the opinions of Lt. Stubbs and Chief Greenwood, who both questioned Huemiller about his conduct. OCSC's finding that Huemiller misrepresented the truth during an internal affairs investigation is supported by the testimony of Lt. Stubbs, Lt. Watts, and Chief Greiner, as well as the reports and opinions of Chief Greenwood. OCSC's finding that Huemiller violated a superior officer's order is supported by the testimony of Lt. Stubbs and Officer McGregor.[1] We conclude that OCSC's key findings are supported by substantial evidence, given the record as a whole.

¶4 "In determining whether the charges warrant the disciplinary action taken, we acknowledge that discipline imposed for employee misconduct is within the sound discretion of the Chief." *Lucas*, 949 P.2d at 761. "The Chief must have the ability to manage and direct his officers, and is in the best position to know whether their actions merit discipline." *Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶22, 8 P.3d 1048.

> We therefore proceed cautiously, so as not to undermine the Chief's authority, noting however, that he exceeds the scope of his discretion if the punishment imposed is in excess of "the range of sanctions permitted by statute or regulation, or if, in light of all the circumstances, the punishment is disproportionate to the offense."

*Id.* (quoting *Lucas*, 949 P.2d at 761).

¶5 Huemiller argues that "in light of the length and quality of [his] service and the nature of the alleged wrongdoing," his termination exceeds the range of sanctions permitted. OPD's policy number twelve, entitled "Complaints of Misconduct," specifically states that "[m]embers being questioned in an administrative investigation are required to answer truthfully. Refusal to answer or answering falsely is cause for disciplinary action, including termination from the department." Additionally, " '[h]onesty and credibility are crucial to [an officer's] proper performance of his [or her] duties,' " *Lucas*, 949 P.2d at 762 (second and third alterations in original) (citations omitted), and because "police officers are 'in a position of trust' " they must be " 'held to the highest standards of behavior.' " *Id.* (citation omitted). After the post-termination hearing, OCSC found that "[Huemiller] was either not truthful in an Internal Affairs Investigation concerning adherence to [OPD]'s towing procedures ... in January 1996 ... or he was not truthful in his interview on this same subject ... on March 8, 2000." Given OCSC's finding that Huemiller was untruthful during an internal affairs investigation, OPD's firm policy

---

1. Additionally, we must defer to OCSC's express finding that "Huemiller was not a credible witness during the August 13–15, 2001, hearing."

*See Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 758 (Utah Ct.App.1997).

against answering falsely during an investigation, and the high standards officers must adhere to, we conclude that Huemiller's termination was within the permitted range of sanctions for this violation alone.[2]

¶ 6 Next, we determine if " 'in light of all the circumstances, the punishment is disproportionate to the offense[s]' " Huemiller committed. *Kelly*, 2000 UT App 235 at ¶ 22, 8 P.3d 1048 (quoting *Lucas*, 949 P.2d at 761). Huemiller "carr[ies] the burden of showing some meaningful disparity of treatment between [him]self and other similarly situated employees." *Id.* at ¶ 30. To prove the disparity, Huemiller raises numerous examples where officers committed various types of misconduct but were not subsequently terminated. However, despite Huemiller's affirmative duty to marshal all the evidence in support of OCSC's decision, *see Whitear v. Labor Comm'n*, 973 P.2d 982, 984 (Utah Ct.App.1998), Huemiller failed to mention the fact that two other officers, under the same internal affairs investigation, were also terminated for violating OPD's towing policy, even though they were more cooperative and contrite in the course of OPD's investigation.

¶ 7 This demonstrated consistency persuades us that there was no meaningful disparity between Huemiller's treatment and that of other *similarly* situated officers. *See Kelly*, 2000 UT App 235 at ¶ 21, 8 P.3d 1048 (determining whether charges warrant the sanction imposed requires an examination of whether the sanction is "consistent with previous sanctions imposed by the department pursuant to its own policies"). On review, the Chief's decision to terminate and OCSC's decision to affirm the termination "were fully justified given [Huemiller]'s overall conduct,"

*id.* at ¶ 25, OPD's policies against such conduct, and the treatment of other similarly situated officers.

¶ 8 Finally, Huemiller argues that he was required to disprove the charges against him at the OCSC hearing and that this violated his due process rights. OCSC rule 10–6 states: "The procedure at the hearing shall require that the appellant first establish the grounds on which he or she relies to disprove the action taken by the appointing authority which he or she considers creates the adverse [e]ffects." Ogden City Civil Service Commission Rules and Regulations, § 10–6. We disagree with Huemiller's interpretation. This provision does not impose upon the employee the duty to prove his innocence. Rather, it only imposes on the employee the burden of establishing the basis for his challenge to "the action taken by the appointing authority."[3] *Id.* This is neither a troubling nor an unfamiliar concept. " '[I]n the typical challenge to agency action, the party challenging the action carries the burden of demonstrating its impropriety.' " *Kelly*, 2000 UT App 235 at ¶ 30, 8 P.3d 1048 (citation omitted). "Under this framework, the burden was on [Huemiller] to establish a prima facie case[.]" *Id.* Indeed, unless Huemiller has some basis on which to challenge the action taken or can refute the factual premise on which the action was based, there is no point in appealing the action taken by the police chief. It only makes sense to begin the OCSC proceeding by learning what the basis of the employee's challenge is.

¶ 9 Our interpretation of rule 10–6 accords with OCSC's actual practice in this case. Its lengthy decision, including detailed findings of fact, alludes to no failure of proof on Huemiller's part as a basis for its decision.

---

2. Although Huemiller also violated OPD's towing policy, had a conflict of interest, and disobeyed a superior officer's order, his answering falsely, by itself, permits the sanction of termination, at least absent concerns about disproportionality. Therefore, we need not discuss whether the other violations, individually or collectively, permit termination. We next consider the disproportionality claim, and in that context we do consider the other violations.

3. The language used in rule 10–6 is admittedly not a model of precision. In no sense can the

employee actually be expected to do what the provision says, i.e., "disprove the action taken by the appointing authority." The "action taken"—in this case, termination—is a matter of record that cannot be disproved. As of the time of the OCSC hearing, Huemiller's termination was a historical fact. The "plain meaning" of the provision, then, is nonsensical. We therefore construe rule 10–6 in the context of the overall scheme of OCSC's rules and regulations and its actual practice.

On the contrary, it reflects OCSC's view that OPD ultimately bore the burden of establishing the factual basis underlying the police chief's termination decision and the reasonableness of that decision.

¶ 10 Affirmed.

¶ 11 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and JAMES Z. DAVIS, Judge.