2015 UT App 116

# THE UTAH COURT OF APPEALS

GREG HOLLENBACH,
Petitioner,
*v.*
SALT LAKE CITY CIVIL SERVICE COMMISSION AND
SALT LAKE CITY CORPORATION,
Respondents.

Memorandum Decision
No. 20140045-CA
Filed April 30, 2015

Original Proceeding in this Court

Bret W. Rawson, Nate N. Nelson, and Jeremy G.
Jones Attorneys for Petitioner

J. Elizabeth Haws, Attorney for Respondents

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES JAMES Z. DAVIS and JOHN A. PEARCE concurred.

ORME, Judge:

¶1    Greg Hollenbach seeks judicial review of the Salt Lake City Civil Service Commission's decision upholding his sixty-hour suspension from the Salt Lake City Police Department. Hollenbach argues that (1) the Commission deprived him of due process by denying certain discovery requests and engaging in ex parte communications; (2) the charges against him were not supported by substantial evidence; and (3) the Commission abused its discretion by upholding the suspension. We decline to disturb the Commission's decision.

¶2    The incident at issue here was not Hollenbach's first experience with departmental discipline. Prior to this incident, the Police Department had disciplined Hollenbach on four separate occasions between 2004 and 2010. He received a written

reprimand for failing to follow computer protocols, an oral admonishment regarding use of discretion, a written reprimand regarding use of discretion,[1] and a forty-hour suspension. The forty-hour suspension is of particular relevance because it grew out of circumstances very similar to those now before us and provided Hollenbach with the opportunity to be more precisely informed about policies that he claims were vague, as we discuss more fully below. *See infra* ¶¶ 21–22.

¶3      The incident now at issue occurred in July of 2011. Hollenbach responded to a dispatch call made in response to a report by an off-duty officer, who was working a secondary security job at a retail establishment, about a person in need of assistance. When Hollenbach arrived on the scene, he did not contact the off-duty officer but instead remained in his car, where he spoke in Spanish to a woman who approached him and had questions about how she could obtain custody of her niece. Hollenbach remained in his vehicle for the entire interaction, speaking to the woman across the width of the police cruiser and out the passenger window. Through the window, she handed him what appeared to be "Mexican custodial papers." Hollenbach speaks conversational Spanish but admitted he could not "actually read a legal document and translate it." During the brief encounter, he provided the woman with contact information for the courts and closed the call as a "no-case."

¶4      The steps (or lack thereof) taken by Hollenbach contrast starkly with what the situation required, as explained by the off-duty officer at the hearing before the Commission. The off-duty officer recounted that he had been approached by a Spanish-

---

1. No helpful discussion or explanation of the term "use of discretion" is readily apparent from our review of the record, and the parties do not address these written and oral reprimands in any detail in their briefs.

speaking man and woman who had concerns about a custodial dispute. They wanted an officer to accompany them to a nearby home to do either a welfare check or what the off-duty officer characterized as a "standby assist" on a young girl. Accordingly, the off-duty officer, who was not in a position to deal with the matter while working for a private employer, called the dispatcher and requested that another Spanish-speaking officer be sent to assist the couple.

¶5     Hollenbach arrived in prompt order but did little to understand the situation or assist the couple. He did not obtain the names of the individuals with whom the off-duty officer spoke or even the name of the woman with whom he personally spoke. He did not find out the name of the young girl who the woman said was her niece, ask where the child was located, or inquire about the circumstances that caused the couple to be concerned. Hollenbach did not ask whether the individuals on the scene were the parties actually listed in the documents he was handed. He made no effort to better understand the documents handed to him.[2] He took no notes regarding the incident, did not make an entry in his dispatch log, and did not write a police report. Hollenbach took no steps to check on the child in question, ascertain her whereabouts, or ensure her safety.

¶6     The Police Chief determined that Hollenbach's conduct during this incident violated two Police Department policies[3]

---

2. The off-duty officer was nearby and also spoke Spanish. Furthermore, the Police Department provides officers with a language line they can call for assistance.

3. Policy III-590, Performance of Duty, requires officers to "meet established performance standards and goals and meet the City's standards for efficient, safe, effective and courteous operations." Policy I, Core Values, Service to the Community,

(continued…)

and suspended him without pay for sixty hours. Hollenbach appealed his suspension to the Commission, which upheld the disciplinary decision. Hollenbach now seeks judicial review of the Commission's decision.

¶7     Hollenbach first asserts that the Commission violated his due process rights by denying discovery that, he argues, was necessary for him to prepare his case and by engaging in impermissible ex parte communication. "We afford the Commission no deference here, as constitutional challenges constitute questions of general law. Thus, we review the Commission's procedures and resulting actions for correctness." *Harmon v. Ogden City Civil Serv. Comm'n*, 2007 UT App 336, ¶ 7, 171 P.3d 474 (internal citations omitted).

¶8     In *Lucas v. Murray City Civil Service Commission*, 949 P.2d 746 (Utah Ct. App. 1997), we explained that "[b]ecause section 10-3-1012 [of the Utah Code] confers upon civil service employees a property interest in continued employment, we must determine what process is due." *Id.* at 753. We then went on to "conclude that under both the Fourteenth Amendment and the provision in section 10-3-1012," Lucas, a city police officer like Hollenbach, was "entitled to due process by way of oral or written notice of the charges, an explanation of the employer's evidence, an opportunity to respond to the charges in 'something less' than a full evidentiary hearing before [discipline], coupled with a full post-[discipline] hearing 'at a meaningful time.'" *See id.* at 749, 754 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–47 (1985)). In sum, "'[t]he fundamental requirement of due process is the opportunity to be

---

(…continued)
states, "Whether responding to calls for service or working in partnership with the community, we should always strive to provide the quality and level of service we would expect for ourselves or for any member of our family."

heard, at a meaningful time and in a meaningful manner.'" *Department of Transp. v. Osguthorpe*, 892 P.2d 4, 8 (Utah 1995) (quoting *Satterfield v. Edenton–Chowan Bd. of Educ.*, 530 F.2d 567, 572 (4th Cir. 1975)).

¶9    Hollenbach claims that the Commission's refusal to allow him to take certain depositions and to have a number of subpoenas issued deprived him of due process. He also claims that an ex parte conversation between a member of the Commission and one of the Police Department's witnesses violated his right to due process.

¶10    We are not persuaded that the Commission's discovery decisions unduly limited Hollenbach's opportunity to be heard or otherwise impacted the fairness of the proceeding. Prior to his hearing, Hollenbach issued five subpoenas and notices of deposition. He also submitted a preliminary witness list that identified thirty witnesses, ranging from Salt Lake City Mayor Ralph Becker to "John Doe." The Commission limited the number of witnesses Hollenbach could call and quashed the subpoenas and depositions.[4]

¶11    Hollenbach contends that the disallowed depositions and subpoenas would "show that discipline was initiated as a pretext to punish [Hollenbach] for his affiliation with the Utah Fraternal Order of Police." Hollenbach advanced this ulterior-motive theory repeatedly in the hearing before the Commission. And he was permitted to call a witness at his hearing whose sole purpose was to help him develop this theory. Hollenbach offers no explanation as to how the depositions and subpoenas he sought might have produced evidence that differed from the evidence he presented at the hearing. Therefore, we are left to

---

4. Three of the five individuals Hollenbach sought to depose were ultimately called as witnesses at the hearing before the Commission.

assume that the evidence obtained from those discovery requests would have been merely cumulative, and Hollenbach has not demonstrated otherwise.

¶12    The ex parte communication concerned a conversation between a Commission member and the Deputy Chief of the Police Department. During that conversation, the Commissioner expressed uneasiness over some of the materials she had reviewed in Hollenbach's file. Specifically, she had read that during the Internal Affairs investigation of the incident, two of Hollenbach's fellow officers had indicated that after his previous forty-hour suspension, Hollenbach "looked like he was about ready to snap." The officers said "that they were . . . concerned about his behavior." The Commissioner involved in the conversation approached the Deputy Chief and asked about "the outcome of their investigation and whether there was anything [the Commissioners] needed to be concerned about." The Deputy Chief assured her that she need not worry.

¶13    The Commissioner proffered these details of the conversation on the record and, when asked, indicated that the Deputy Chief's comments had allayed her concerns and that she could decide the matter objectively. The Deputy Chief, who had previously testified as a witness for the Police Department, was then recalled. He affirmed on the record that the Commission members had no cause to be concerned for their safety or Hollenbach's mental state.

¶14    The Commission acknowledges that the ex parte communication was improper, and we agree that it was. However, for us to disturb the decision of the Commission, Hollenbach must demonstrate not only that the communication was improper but also that it prejudiced him in some way. *See Nelson v. City of Orem*, 2013 UT 53, ¶ 38, 309 P.3d 237 (requiring a showing of prejudice in addition to a showing of partiality). He has not done so.

¶15    To begin with, the Commissioner's concerns originated with the evidence she had properly reviewed—not with the ex parte communication. Rather than prejudicing the Commissioner against Hollenbach, the ex parte communication actually assuaged her concerns. So while the circumstances of the conversation were improper, it did not result in prejudice. Finally, it is clear that the Commission's decision was based solely on the specific incident it was asked to review and not on the subject matter of the ex parte communication. The order references only those facts that were properly before the Commission, and as we discuss below, those facts sufficiently support the Commission's decision. From all that appears, the Commission's decision was wholly unaffected by the ex parte communication, and Hollenbach has not demonstrated otherwise. Thus, we see no prejudicial error. *See Liska v. Liska*, 902 P.2d 644, 649 n.7 (Utah Ct. App. 1995).

¶16    The second and third issues raised by Hollenbach— whether the decision against him was supported by substantial evidence[5] and whether the Commission abused its discretion by

_____

5. Hollenbach actually asserts as his second assignment of error that the Police Chief did not have substantial evidence to support the charges. However, we agree with the Commission and the City that this "evinces a misunderstanding about the role of the Court of Appeals in reviewing [Commission] decisions." It is the Commission's role to determine whether a department head's disciplinary decision is supported by the facts. *See* Utah Code Ann. § 10-3-1012(2) (LexisNexis 2012); *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 758 (Utah Ct. App. 1997). Then, if the Commission's findings of fact are challenged in a judicial review proceeding, we will determine whether those findings are supported by substantial evidence. *Lucas*, 949 P.2d at 758 ("The Commission's findings, upon which the charges are based, must be supported by substantial evidence viewed in light of the whole record before us."). We

(continued…)

upholding his suspension—are properly considered together. Because we conclude that the Commission's findings are supported by substantial evidence, we also conclude that the Commission did not abuse its discretion in upholding Hollenbach's suspension.

¶17 In affirming the Police Chief's decision, the Commission was required to consider two questions: "(1) do the facts support the charges made by the department head, and, if so, (2) do the charges warrant the sanction imposed?" *See Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 758 (Utah Ct. App. 1997). Because the Commission answered yes to both questions, its decision to uphold the suspension was a logical one. We now consider whether its decision was legally sound, first considering whether the Commission's factual findings are adequately supported by the evidence.

¶18 Hollenbach makes no real attempt to demonstrate that the Commission made erroneous factual findings.[6] Instead, he highlights facts in his favor that tend to show that his conduct did not warrant discipline. However, the question before us is not whether there are facts in the record that could support a decision more favorable to Hollenbach. Instead, it is our role to

---

(…continued)

therefore consider whether the Commission's—not the Police Chief's—findings are supported by substantial evidence.

6. In arguing that the evidence did not support the charges against him, Hollenbach complains that he was initially charged with failing to take police action and failing to generate a police report. It is unclear how, exactly, Hollenbach believes the slight alteration of charges indicates a lack of substantial evidence. Indeed, failing to take police action and failing to generate a police report were two key components of the evidence used to support the suspension decision.

determine whether "[t]he Commission's findings, upon which the charges are based, [are] supported by substantial evidence viewed in light of the whole record before us." *See id.*

¶19    The task is relatively simple in this case. The Commission set forth numerous stipulated and undisputed facts that readily support its decision. For instance, there was no dispute that the woman with whom Hollenbach spoke desired an officer to accompany her to check on a child. Hollenbach did not check on the child. There was also no dispute over these facts: Hollenbach remained in his police vehicle for the duration of his interaction with the woman; the woman handed Hollenbach papers in Spanish; Hollenbach cannot read Spanish fluently but did not seek assistance; and Hollenbach did not obtain the names of any of the parties involved.

¶20    The Police Chief reviewed these facts and noted that there was "a citizen who felt it was necessary to contact the police and seek . . . assistance or help." The Chief recognized that the off-duty officer "felt it was necessary to contact an on-duty officer to come and investigate and to actually take care of the situation." The Chief explained:

> I think that the safety of [the child involved] is paramount, and we did nothing in this particular circumstance to even determine if that person was in danger, in need, or if everything was appropriate. . . . And so we failed in so many levels that it is very disappointing as the Police Chief to think that an officer responded and did nothing.

He further explained that departmental policies establish an expectation that when a citizen calls the police, the situation should improve. Officers are expected to "take the appropriate action . . . to ensure that [they] have done all [they] can" to serve the community. The evidence supports the Commission's determination that Hollenbach violated Police Department policies when he did not do all he could; indeed, the established

facts demonstrate a startling lack of Hollenbach's doing anything helpful.

¶21　Hollenbach asserts an alternative argument that there was virtually no way he could have abided by the "vague policy language." He offers no case law and little explanation on this point, but we deem it appropriate to address the unpersuasiveness of Hollenbach's argument on the record before us.

¶22　Approximately one week before the incident in question, Hollenbach attended a hearing on the earlier episode that gave rise to his forty-hour suspension. That suspension also arose from a call involving a child custody dispute. As with the incident now before us, Hollenbach did not write a report, did not read the legal documents that were presented to him, and treated the call like it "'wasn't important.'" The forty-hour suspension was based in part on Hollenbach's violation of two Department policies: "Performance of Duty" and "Core Values, Service to the Community." These are the *exact* policies that the Commission determined Hollenbach violated in the present case. The Chief testified that at the forty-hour suspension hearing, he made his expectations of Hollenbach "perfectly clear." He spent three hours explaining what his expectations were and why Hollenbach's conduct fell short. Hollenbach's argument that the policies were vague is wholly unpersuasive, given the factual similarities in the situations that led to his forty- and sixty-hour suspensions.

¶23　All that is left to consider, then, is whether the charges warranted a sixty-hour suspension. "In determining whether the charges warrant the disciplinary action taken, we acknowledge that discipline imposed for employee misconduct is within the sound discretion of the Chief." *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 761 (Utah Ct. App. 1997). We will conclude that discretion was abused "if, in light of all the circumstances, the punishment is disproportionate to the

offense." *Id.* Considering all the circumstances of this case necessarily includes consideration of Hollenbach's prior discipline, given that the Department follows a model of progressive discipline. Hollenbach was not simply given a sixty-hour suspension because he failed to abide by Department policies on this one occasion. Instead, the sixty-hour suspension was the latest step in a program of progressive discipline, which began with Hollenbach being disciplined via verbal and written reprimands and which had progressed to a forty-hour suspension. These lesser sanctions had apparently not proven adequate in prompting Hollenbach to improve. Thus, we agree with the Commission that Hollenbach's suspension was proportional to the offense because "Hollenbach had repeated substandard conduct that led to appropriate progressive discipline." As the Commission noted, "the nature of [Hollenbach]'s policy violations that resulted in his suspension related directly to his official duties and impeded his ability to carry out those duties."

¶24    Hollenbach was not deprived of due process when the Commission denied his discovery requests, because he had the opportunity to be fairly heard despite these denials. Furthermore, one Commissioner's ex parte communication with a Police Department witness, while improper, did not prejudice Hollenbach under the circumstances. Finally, because the Commission's findings are substantially supported by the record, and because the sixty-hour suspension was proportional to the offense, the Commission did not abuse its discretion in upholding the suspension. We therefore decline to disturb the Commission's decision.

––––––––––