2008 UT App 283

**Kathleen Lenay HUISH, Petitioner and Appellant,**

v.

**Glen Frank MUNRO, Respondent and Appellee.**

No. 20050440–CA.

Court of Appeals of Utah.

July 25, 2008.

David O. Drake, Midvale, for Appellant.

Paige Bigelow, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Kathleen Lenay Huish appeals from the trial court's modification decree granting sole legal custody of the parties' minor child to Glen Frank Munro on Munro's motion to modify the parties' divorce decree to change what had been joint legal custody. On ap-

peal, Huish assigns fifteen errors, which for convenience we restate as four: (1) that her due process rights were violated; (2) that res judicata and issue preclusion bar the parties from relitigating custody; (3) that the trial court erred in allowing a witness to testify about the best interests of the child without first explicitly determining whether there existed a substantial change in circumstances warranting a potential change in custody; and (4) that the trial court's findings of fact are unsupported by the evidence and its legal conclusions are erroneous. We affirm.

## I. Due Process

¶2 Huish makes two due process arguments. First, she argues that the trial court incorrectly ruled that she had rested her case when she had not and that because of that ruling she was not permitted to question Dr. Monica Christy as a direct witness during her case-in-chief. This, she asserts, denied her due process. Second, Huish argues that the trial court erred in considering Dr. Valerie Hale's testimony as a special master because Dr. Hale, while acting in that capacity, allegedly accepted money from, and engaged in ex parte communication with, Munro's attorney and submitted documents to the court without providing proper notice to the parties. Huish asserts that given these facts, and because Dr. Hale's testimony was adverse to Huish, she was denied due process. We address each argument in turn, noting that we review constitutional questions, including those regarding due process, for correctness. *See Chen v. Stewart*, 2004 UT 82, ¶25, 100 P.3d 1177.

### A. Huish's Case–in–Chief

¶3 "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted). "In the context of parental rights, '[d]ue process requires that a parent be given a meaningful opportunity to be heard by submitting testimony herself and

by witnesses.'" *In re S.H.*, 2007 UT App 8, ¶21, 155 P.3d 109 (alteration in original) (citation omitted). Huish argues that the trial court incorrectly ruled that she had rested her case when she had not, and because of that ruling she was not permitted to question Dr. Christy as a direct witness during her case-in-chief, depriving her of her due process rights. While we agree that the trial court erred, we are not convinced the error amounts to a violation of Huish's due process rights.

¶4 On the ninth day of trial, during Huish's case-in-chief, the following exchange, with our emphasis, occurred between the trial court and the parties' counsel:

MR. DRAKE [Huish's attorney]: Your Honor, Ms. Bigelow [Munro's attorney] and I had a conversation yesterday about the order and she has ... some rebuttal witnesses ... and ... we'll accommodate her to allow her, with the court's permission, to have these rebuttal witnesses come in at this point *and then we'll finish off with our case in chief.*

THE COURT: What more do you have left on your case in chief?

MR DRAKE: Your Honor, *we intend to call the respondent [Munro] and possibly Monica Christy as a direct witness* and that would be it. And if we can take care of Dr. Christy with our rebuttal and just to save the Court time, I think that would be more [ef]ficient.

THE COURT: I have no problem with that, but what will you be asking her in your case [in] chief that you couldn't cover on any cross or rebuttal?

MR. DRAKE: Well, your Honor I'm just looking at the scope of the rebuttal and me having to go to questions limited by that scope, if the Court would be willing I'd like to expand that scope just to do that. Then we can end it all at one time.

. . . .

THE COURT: Well, my sense is as long as Dr. Christy's here let's get her on and

off, and not have to take her back and forth. So with that I'm going to allow leeway on both sides as to completing her testimony, with the idea that you don't abuse it and you don't bring up new issues, but we get her out of the way.... As to Mr. Munro, is he going to be called in your rebuttal case?

MS. BIGELOW: Yes, your Honor.

THE COURT: Well then, *why don't we allow them to call him in their case in chief* and you can have the same leeway as to rebuttal and your recross *of their direct.* And then you can cover whatever rebuttal you need to do *after they're done with their direct on him.*

. . . .

.... So let's begin with your rebuttal witnesses.... What you are saying is when you're finished with that you don't necessarily want to bring Mr. Munro on as your rebuttal witness, *you'll allow them to bring on their case in chief to finish it out* . . . .

MS. BIGELOW: Yes....

We take this exchange to mean that Munro was permitted, by agreement among the parties and the trial court, to present his rebuttal witnesses, including Dr. Christy, out of order and during Huish's case-in-chief; that in cross-examining Dr. Christy on rebuttal, Huish would be permitted to exceed the scope of rebuttal in order to avoid having to call her as a direct witness yet again; that Huish would then call Munro as her direct witness to complete her case-in-chief, since Munro was undecided about whether to testify on rebuttal; and that Munro, if he so chose, would then testify on rebuttal.

¶5 On the tenth day of trial, during Huish's cross-examination of Dr. Christy, another exchange occurred following an objection raised by Munro that Huish was exceeding the scope of rebuttal:

MR. DRAKE:.... When we were discussing this last Thursday, I said I'd like to combine, in the interest of judicial economy, rebuttal and having her as a direct witness. I believe the Court stated that that would be all right. If not, then I can do rebuttal with her and come back again and have her as direct.

THE COURT: No, I don't want that to happen, but be mindful of the time concerns. Go ahead.

This second exchange supports our characterization of the first and clearly establishes that Huish had not rested her case. But the trial court, shortly after this second exchange and while Dr. Christy was still on the stand, interrupted Huish and asked, "Why wasn't this all covered on cross when you first had a chance to talk with her . . . ? This is neither rebuttal [n]or fair game for you to call her as a witness. You had that opportunity on cross." A few moments later in response to another objection by Munro that Huish was exceeding the scope of rebuttal, a third exchange occurred:

THE COURT:.... And why didn't you bring this up in cross, when she was on the stand initially?

MR. DRAKE: Well, your Honor, in cross . . . we're limited to the scope of the direct, and I think under—I mean, this is our case in chief. I think we have a right to call any witness we want and interview them.

THE COURT: And ... that's ... true, however, when you've had the opportunity to take this matter on cross, which is all part of her evaluation.... This matter should have been taken up on cross. If it wasn't taken up on cross you've waived it, you cannot revive it by calling a witness on your own behalf or terming it to be rebuttal. Rebuttal is only—only as to what Huish—I mean Ms. Bigelow has done. And even though I agree with you that I've allowed you to expand it a bit, it still has to be new information not covered or coverable under cross. And so, objection is sustained.

The trial court clarified its ruling a few minutes later in a fourth exchange, with our emphasis added:

THE COURT: And as an explanation as to my ... ruling on your objection, you indicated that this is—you're combining your case in chief along with cross-examination of Dr. Christy. And this is, this is rebuttal. You have concluded your case in chief. The only exception I made for that is the possibility of you calling Mr. Munro and then allowing extensive consideration on that as to rebuttal. But this is rebuttal testimony. It's been rebuttal testimony for the last three witnesses *and your case in chief has been concluded.* So it's even more grounds for me ruling as I did, correctly as I stated. So go ahead.

MR. DRAKE: But, your Honor, may I respond to that?

THE COURT: Yes.

MR. DRAKE: If you'd recall, ... we never rested. In fact, as an accommodation to Paige Bigelow, we allowed her to bring in Valerie Hale and Dr. Christy to testify because they were these two experts whose time capacities were limited. And so as an accommodation, and strictly as an accommodation ... we allowed her to bring these two in. We have never rested. And Mr. Munro is our—is another direct witness, and I think we're entitled to bring up anything we can that's relevant on direct on our case in chief.

. . . .

We listed [Dr. Christy] as a witness, and on our direct, but we have never rested.

THE COURT:.... I've ruled. Go ahead.

¶ 6 We recognize that "[t]he rules of evidence are closely tied to the constitutional mandate that proceedings be conducted consistent with due process," 1 R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 6 (2007), and that the trial court has discretion under those rules to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," Utah R. Evid. 611(a); *see Paulos v. Covenant Transp., Inc.,* 2004 UT App 35, ¶ 20, 86 P.3d 752 (" 'The trial judge

is allowed a wide discretion in his control over the examination of witnesses[.]' ") (citation omitted). The court did just that by granting the parties leeway, in their respective cross-examinations, to exceed the scope of rebuttal or direct testimony in order to avoid having to recall the witnesses, whose testimonies overlapped significantly. But we are somewhat perplexed by the trial court's rulings that Huish had rested—when she clearly had not—and that she could not, during what was to be treated as a direct examination and part of her case-in-chief, directly question Dr. Christy on new matters or probe more deeply on matters that had been raised previously. Our concern is reinforced by the fact that, despite the ruling that she had rested, the trial court later allowed Huish, as part of her case-in-chief, to call Munro as a direct witness, though she declined to do so at that point.

¶ 7 We agree with Huish that the trial court erred in ruling that she had rested her case. We further agree that it was error for the trial court to rule that Huish, as a part of her case-in-chief, could not question Dr. Christy on new matters or probe her for additional information related to matters already raised during Munro's case-in-chief. Indeed, one of the fundamental rules of evidence is that "[a]ll relevant evidence is admissible[.]" Utah R. Evid. 402. However, our analysis does not end here.

¶ 8 Unless an appellant demonstrates that an error is prejudicial, *see State v. Lafferty,* 2001 UT 19, ¶ 35, 20 P.3d 342 (" 'The burden of showing harmfulness ... rests on the complaining party.' ") (omission in original) (citation omitted), *cert. denied,* 534 U.S. 1018, 122 S.Ct. 542, 151 L.Ed.2d 420 (2001), it will be deemed harmless and no appellate relief is available, *see State v. Evans,* 2001 UT 22, ¶ 20, 20 P.3d 888 ("[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings."). Where the complaint on appeal is about the exclusion of evidence, it is essentially impossible to demonstrate preju-

dice in the absence of a proffer of what the excluded evidence would show. *See* Utah R. Evid. 103(a)(2).

¶ 9 No such proffer was made here, and it is difficult to imagine that any important testimony Dr. Christy had to offer was not already in the record. Over the course of this eleven-day trial, which spanned more than two months, Dr. Christy gave many hours of testimony. Munro called Dr. Christy as a witness during his case-in-chief. Huish cross-examined her. Munro later called Dr. Christy as a rebuttal witness, and again Huish—granted substantial leeway by the trial court to exceed the scope of rebuttal notwithstanding the errors mentioned above—cross-examined her. Dr. Christy outlined the basis for her conclusions numerous times and was thoroughly questioned by both parties on a wide range of issues. Based on our review of the extensive record on appeal, we can see little, if anything, that additional testimony by Dr. Christy could possibly have contributed. Nor does Huish convincingly explain what new insights Dr. Christy could have added. Thus, while we agree that the trial court erred in ruling that Huish had rested her case and in not allowing her to question Dr. Christy on new matters or probe more deeply on other matters raised earlier, we conclude that these errors were harmless.

### B. Dr. Hale's Testimony

¶ 10 As best we can tell, Huish also argues that the trial court erred in considering Dr. Valerie Hale's testimony because Dr. Hale, while acting as a special master, allegedly accepted money from and engaged in ex parte communication with Munro's attorney and submitted documents to the court without providing proper notice to the parties. Huish asserts that given these claimed facts, and because Dr. Hale's testimony was adverse to Huish, Huish was somehow denied due process. But we cannot tell how, and

Huish's initial brief provides little, if any, guidance. As a special master, Dr. Hale received payments from both parties for her services. When Huish refused to pay Dr. Hale and essentially cut off all communication with her, Dr. Hale reported that information to the trial court in two letters, copies of which were sent to both parties, and ultimately withdrew from the case. We see no obvious due process violation in any of this, and even Huish admits that "it is not known how [Dr. Hale's conduct] affected the decision of the trial court."

¶ 11 Moreover, it is not our obligation to research the record and the law to determine whether some violation might have occurred and, if so, whether it was of any consequence. On the contrary, the burden is on the appellant to include in her initial brief an argument that contains her "contentions and reasons . . . with respect to the issues presented . . ., with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). *See also State v. Thomas,* 961 P.2d 299, 305 (Utah 1998) ("While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court."). Because Huish failed to meet this obligation, we decline to address her argument further.[1] *See Smith v. Smith,* 1999 UT App 370, ¶¶ 8–17, 995 P.2d 14 (declining to review a party's argument because the party's brief failed to cite legal authority and impermissibly shifted the burden of analysis to the reviewing court, and therefore did not satisfy the requirements of rule 24(a)(9)), *cert. denied,* 4 P.3d 1289 (Utah 2000).

### II. Res Judicata and Issue Preclusion

¶ 12 Huish next argues that res judicata and issue preclusion bar Munro from relitigating custody. She asserts that because Munro stipulated to the parties' origi-

---

1. We also decline Huish's invitation to consider the analysis she ultimately provided in her reply brief. *See Sorenson v. Kennecott–Utah Copper Corp.,* 873 P.2d 1141, 1143–44 n. 2 (Utah Ct.App. 1994) (refusing to examine an issue argued only in the appellant's reply brief because the appellee had no opportunity to respond).

nal custody arrangement despite an opportunity to litigate, he cannot now claim a change of circumstances based on the unworkability of that arrangement, especially since the parties' inability to get along and effectively communicate is nothing new. We disagree.

¶ 13 Notwithstanding the trial court's "continuing jurisdiction to make subsequent changes or new orders for the custody of the children and their support ... as is reasonable and necessary," Utah Code Ann. § 30–3–5(3) (2007), there is no question but that the principle of res judicata applies to modification proceedings, *see Smith v. Smith,* 793 P.2d 407, 410 (Utah Ct.App.1990). The application of the principle to such proceedings, however, is moderated by "the equitable doctrine that allows courts to reopen [custody] determinations [only] if the moving party can demonstrate a substantial change of circumstances." *Id.* "In order to meet this threshold requirement, a party must show, in addition to the existence and extent of the change, that the change is significant *in relation to* the modification sought. The asserted change must, therefore, have some material relationship to and substantial effect on parenting ability *or the functioning of the presently existing custodial relationship."* *Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984) (second emphasis added). "[T]he nonfunctioning of a joint custody arrangement is clearly a substantial change in circumstances which justifies reopening the custody issue." *Moody v. Moody,* 715 P.2d 507, 509 (Utah 1985). This is true because joint custody orders are "premised on the parents' ability to work out the details of custody between themselves. If the parents are unable to make this cooperative arrangement work, that alone shows a change of circumstances warranting a reexamination of the original order." *Id.* at 510 (Zimmerman, J., concurring). The trial court clearly found that the initial custody arrangement proved to be unworkable in this case. This is enough to meet the threshold requirement.

¶ 14 Huish makes much of Munro's admission that he originally stipulated to the parties' joint custody arrangement, at least in part, because he felt that a full adjudication might be less advantageous for him at that time. Huish further contends that Munro knew the joint custody arrangement would not work and that the principles served by res judicata are frustrated if, given these facts, Munro can reopen the issue just eight months after agreeing to the stipulated initial custody order. Huish's argument cuts both ways.

¶ 15 The principles served by the changed-circumstances rule are twofold: stability for the child and advancing the sound policy favoring the finality of judgments. *See Elmer v. Elmer,* 776 P.2d 599, 602 (Utah 1989). But "the res judicata aspect of the rule must always be subservient to the best interests of the child." *Id.* at 603. Thus, in situations like this one where custody is determined by stipulation, res judicata should be applied much less rigidly because

> an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child. When a child's custody is determined by stipulation or default, the custody determination may in fact be at odds with the best interests of the child. When based on a stipulation or default, a custody decree may reflect such fortuitous and extraneous factors as improper influence exercised by one parent over the other *or a temporary loss of resolve by one parent* caused by stress, guilt, or financial distress that causes that parent to give in to the demands of the other. Whether the best interests of the child are in fact served by a custody arrangement determined by stipulation or default, therefore, is often just plainly fortuitous.

*Id.* (emphasis added). The res judicata aspect of the rule also carries less weight here because the initial order was in effect for just eight months. *See id.* at 604 ("A very short custody arrangement of a few months, even if nurturing to some extent, is not entitled to as much weight as a similar arrangement of substantial duration."). Our summation of

these principles, in rejecting Huish's second argument, leads us directly to her next contention.

### III. Best Interests Testimony

¶ 16 Huish argues that the trial court erred in allowing Dr. Christy to testify about the best interests of the child without first explicitly determining whether there existed a substantial change in circumstances warranting a potential change in custody. Again, we disagree.

¶ 17 In *Hogge v. Hogge,* 649 P.2d 51 (Utah 1982), the Utah Supreme Court established a bifurcated analytical construct that must be followed to obtain a change of custody: First, a parent seeking a change in custody must establish a substantial change in circumstances occurring subsequent to the initial decree, and second, the change in custody must be shown to be in the best interests of the child. *See id.* at 53–54. This framework says nothing, however, about how a trial court must receive evidence. Indeed, the Utah Supreme Court has said, since *Hogge,* that "in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed-circumstances test, should receive evidence on changed circumstances and that evidence may include evidence that pertains to the best interests of the child." *Elmer,* 776 P.2d at 605. *See also Moody,* 715 P.2d 507, 511 (Utah 1985) (Daniels, J., concurring) (noting that because "the evidence supporting changed circumstances is almost always the same evidence that is used to establish the best interests of the child," hearing evidence on both issues simultaneously is "the only sensible procedure"); *Smith,* 793 P.2d at 410 ("[A]s part of a change of custody analysis in the requested modification of a nonlitigated custody determination …, the court may consider evidence bearing on the effect of custody on the child.").

¶ 18 Given the trial court's wide discretion in controlling the mode and order of the presentation of evidence, *see* Utah R. Evid. 611(a); *Paulos v. Covenant Transp., Inc.,*

2004 UT App 35, ¶ 20, 86 P.3d 752, we see no error with the court's decision to hear evidence of both changed circumstances and best interests simultaneously, provided it kept its analysis appropriately bifurcated. And indeed, the court made its best-interests determination only after it first found that there existed a change in circumstances warranting best-interests analysis. Ultimately, it is the bifurcation of the analysis—not the literal bifurcation of the proceedings—that matters.

### IV. Findings of Fact and Conclusions of Law

¶ 19 Huish next argues that a number of the trial court's findings of fact are unsupported by the evidence and that the court's legal conclusions are erroneous. A brief reminder of the applicable standards of review is in order.

> A trial court's factual findings underlying a holding of material change of circumstances in a [custody] decree and a determination of the children's best interests may not be disturbed unless clearly erroneous. A court's legal conclusion as to whether a material change in circumstances has occurred that would warrant reconsidering the [original] decree is reviewed for an abuse of discretion. A trial judge's award of custody … is also reviewed for abuse of discretion.

*Sigg v. Sigg,* 905 P.2d 908, 912 (Utah Ct.App. 1995) (citations omitted). Pure questions of law, including the interpretation of statutes, are reviewed for correctness. *See Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201; *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.,* 1999 UT App 87, ¶ 11, 977 P.2d 518, *cert. denied,* 994 P.2d 1271 (Utah 1999).

¶ 20 In its Finding 7, the trial court found that "the joint custody order in the parties' stipulated Decree is unworkable or inappropriate under existing circumstances" and that "the unworkability of the joint custody order constitutes sufficient grounds to modify the order." Huish argues that Utah Code

section 30–3–10.4, upon which the trial court relied, does not allow the trial court to modify the joint "physical" custody provisions of a decree on the basis of the unworkability of a joint "legal" custody order. We do not read the statute in such a limited way.

¶ 21 Section 30–3–10.4 allows a trial court to terminate an order of joint legal custody if it determines "that the joint legal custody order is unworkable or inappropriate under existing circumstances." Utah Code Ann. § 30–3–10.4(3) (2007). It then mandates that the court "enter an order of sole legal custody" and make decisions with respect to "*[a]ll related issues.*" *Id.* (emphasis added). We agree that section 30–3–10.4 is a joint "legal" custody statute, *see Thronson v. Thronson,* 810 P.2d 428, 429–33 (Utah Ct.App.1991), but explicit in its terms is the direction to trial courts to address "[a]ll related issues," Utah Code Ann. § 30–3–10.4(3), one of which is obviously physical custody, *see* Catherine R. Albiston, Eleanor E. Maccoby & Robert R. Mnookin, *Does Joint Legal Custody Matter?,* 2 Stan. L. & Pol'y Rev. 167, 168 (1990) ("There are actually three aspects of joint custody: the legal custody agreement, the physical custody agreement, and the actual residential arrangement for the child.").

¶ 22 Huish also argues that the trial court failed to address certain factors set forth in rule 4–903 of the Code of Judicial Administration, including the duration of the initial physical custody arrangement and child-parent bonding, in determining that a change in physical custody was warranted. In its Finding 11, the trial court stated: "The Court has considered several factors, including the factors set forth in [rule 4–903], in determining custody. Where no findings are made with respect to a particular factor, the Court finds that the factor is not significant or weighty in this case." "Although the court considers many factors, each is not on equal footing. Generally, it is within the trial court's discretion to determine, based on the facts before it and within the confines set by the appellate courts, where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Hudema v. Carpenter,* 1999 UT App 290, ¶ 26, 989 P.2d 491. Given the nearly equal parenting time enjoyed by the parties over the child's life and expert testimony establishing that the parties were equally involved in raising the child, we agree with the trial court that, in this case, the factors that Huish claims are of pivotal significance—the duration of the original physical custody decree and child-parent bonding—are not dispositive.

¶ 23 Munro's efforts to modify the original custody arrangement began after Huish remarried and stated her intention to move with the child and her new husband to Kwajalein, a remote atoll 2100 nautical miles southwest of Honolulu. On the first day of trial, after prodding by the trial court,[2] Huish advised the court that she had reconsidered her intended move and had decided to stay in Utah. In its Finding 8, the trial court found that these facts constituted an additional basis for finding changed circumstances. Huish argues that because she changed her mind about the move, it cannot constitute a change of circumstances warranting a potential change of custody. We frankly doubt that a party can express an intent to do something that would so clearly constitute a change in circumstances, then at the eleventh hour change her mind about it and later assert that because she did not follow through on her expressed intent, there is no actual change in circumstances warranting the court's considering the child's best interests. But given our conclusion that the unworkability of the original custody decree is enough to satisfy the changed-circumstances test, we need not resolve this issue.

¶ 24 Huish further argues that the trial court's Findings 10, 13, 15, and 16 are either unsupported by the evidence, an abuse of

2. The trial court specifically found that Huish "did not state her intention *not* to move to Kwajalein until the Court had taken evidence on the first day of trial and expressly requested that she declare her intentions one way or the other, so as to remove all ambiguity and to clarify the issues for the Court for the remainder of the trial."

discretion, or legally incorrect. We have reviewed these arguments and deem them to be without merit. We decline to discuss them further. *See State v. Carter*, 776 P.2d 886, 889 (Utah 1989).

¶ 25 Affirmed.[3]

¶ 26 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.

---

**3.** The parties each requested attorney fees incurred on appeal. Huish requested attorney fees only in her reply brief, and both parties failed to provide any legal basis for the awards they sought. Both requests are denied. *See* Utah R.App. P. 24(a)(9).