**2020 UT App 171**

# THE UTAH COURT OF APPEALS

RYAN MILLER,
Appellant,

*v.*

BRENDA MILLER,
Appellee.

Opinion
No. 20190748-CA
Filed December 24, 2020

Second District Court, Farmington Department
The Honorable Michael Edwards
No. 134701192

Jonathan Hibshman, Marco Brown, and Rodney R.
Parker, Attorneys for Appellant

Dustin D. Gibb, Attorney for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1     Ryan Miller appeals the district court's dismissal of his petition to modify the parties' divorce decree. Ryan's[1] petition asked that he be appointed the primary custodial parent of the parties' children. The district court dismissed the petition for failure to state a claim under rule 12(b)(6) of the Utah Rules of Civil Procedure and, alternatively, for the parties' failure to engage in a dispute resolution procedure before seeking court intervention. On appeal, Ryan contends the court applied the

---

1. Because the parties share the same last name, we refer to each by their first names, with no disrespect intended by the informality.

wrong standards for dismissal under rule 12(b)(6) and for determining whether a change of circumstances justified modifying the divorce decree. He also challenges the court's dismissal of his petition based on his failure to use a dispute resolution procedure before filing the petition. We reverse and remand for further proceedings.

BACKGROUND

¶2 Ryan and Brenda divorced in June 2014. The divorce decree incorporated, and was based on, the parties' stipulation and property settlement agreement. The parties stipulated, and the court decreed, that they would have joint legal and physical custody of their children, with Brenda as the "primary physical custodial parent" and the children attending school based on her residence. The parties' stipulation and the decree also separately provided parent-time for Ryan.

¶3 Additionally, the parties stipulated to a parenting plan. As relevant here, the plan expressed an overarching preference for resolving co-parenting disputes between them, using "experts to assist them" in doing so "when they are unable to resolve conflict themselves" and to "solve problems and make joint decisions by working through [the] decision-making procedure" included in the plan. It also expressed the parties' agreement to make "major decisions" regarding the children together and to use a mediator before seeking a resolution in court when, "after following the joint decision-making procedure and implementing the governing principles," the parties were unable to "reach a consensus."

¶4 In May 2019, Ryan filed a petition to modify the divorce decree (the Petition). He contended it was in the children's best interest that he be awarded "primary custody" of them, "with Brenda enjoying parent-time pursuant to Utah Code Annotated,

Section 30-3-35.1."[2] Ryan asserted there had been "substantial and material changes in circumstances that were unforeseeable" at the time the decree was entered, and he made twelve allegations in support.

¶5      Specifically, Ryan alleged: (1) "Brenda does not communicate with Ryan regarding [the children] and their needs"; (2) Ryan was "not informed" when one of the children "suffered a concussion" or about the associated "activity restrictions"; (3) "Brenda has refused to allow [the children] to attend significant events in Ryan's and [the children's] lives"; (4) Ryan and his current spouse have a two-year-old child "with whom [the children] are bonded and with whom they desire to spend more time," and Ryan's current spouse works from home and is able to care for the children; (5) "Ryan's job and work hours have stabilized" since the decree was entered, "giving him predictability in when he is at home and able to spend time" with the children; (6) during Ryan's Thursday overnight parent-time, he "spends much of the time . . . doing homework" with the children, "which has accumulated throughout the week" while the children were with Brenda; (7) "Brenda does not give [the children] their medication"; (8) the children "have been neglected in their personal hygiene and appearance"; (9) Brenda allows the children "constant screen time"; (10) Brenda is cohabiting with someone who is "forcing [the children] into a vegan lifestyle, resulting in malnourishment," and who has warrants out for his arrest; (11) the children have asked "Ryan if they can spend more time with him"; and (12) "Brenda has an established pattern of neglecting" the children.

_____

2. Utah Code section 30-3-35.1 provides an "optional parent-time schedule" of "145 overnights" for children "5 to 18 years of age." Utah Code Ann. § 30-3-35.1(1) (LexisNexis 2019). The parties acknowledge this was the parent-time awarded to Ryan under the divorce decree.

¶6    Brenda filed a motion to dismiss the Petition pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, which provides that a party may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Brenda contended Ryan's allegations "fail[ed] to meet the high burden required for a change of custody" because none of them, "even if true, constitute[d] a material and substantial change in circumstances." Therefore, Ryan had "failed to state a claim upon which the relief he seeks, a change of custody, could possibly be granted."[3] Brenda did not argue that the Petition should be dismissed for the additional reason that Ryan had failed to use dispute resolution procedures in relation to his request to modify custody.

¶7    After an evidentiary hearing, the district court dismissed the Petition on two independent grounds. First, the court agreed with Brenda that the Petition failed to state a claim under rule 12(b)(6) for modification of custody. It addressed each of the changed-circumstances allegations and determined most of them "could support some change." But it determined many of the allegations were entitled to "little weight" as part of its "substantial and material change in circumstances analysis." Ultimately, the court concluded that the allegations, taken "as a whole," "as true," and "in the light most favorable to [Ryan]" "do not amount to an allegation that there has been a material and substantial change in the circumstances of the parties and their children that would justify the change requested." On this basis, the court concluded Ryan failed to state a claim upon which the custody modification could be granted and dismissed the Petition.

---

3. Brenda also asked the district court to order Ryan to pay her attorney fees and costs related to the Petition. The court ultimately denied the request, and that ruling has not been challenged on appeal.

¶8 Second, as an alternative ground for dismissal, the court determined Utah Code section 30-3-10.4(1)(c)[4] "means what it says" regarding the use of dispute resolution procedures to resolve disputes related to the modification of custody. During the hearing on Brenda's motion, the court sua sponte raised the issue of whether the parties had attempted to use a dispute resolution procedure, and the court determined they had not. Because Ryan "admitted through counsel that he has not sought" to engage in such procedures, the court determined the Petition was additionally dismissed "for failure to properly use alternative dispute resolution procedures."

¶9 Ryan timely appeals.

## ISSUES AND STANDARDS OF REVIEW

¶10 Ryan appeals the Petition's dismissal under rule 12(b)(6) of the Utah Rules of Civil Procedure. "We review a decision granting a motion to dismiss for correctness, granting no deference to the decision of the district court." *Fehr v. Stockton*, 2018 UT App 136, ¶ 8, 427 P.3d 1190 (quotation simplified). "We likewise review the

---

4. Utah Code section 30-3-10.4(1) sets forth the conditions under which a court may grant a petition for modification of a custody order. In addition to a "verified petition" showing "that the circumstances of the child or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified" and that the modification is in the child's best interest, both parents must also have complied in good faith with an applicable dispute resolution procedure. *See* Utah Code Ann. § 30-3-10.4(1) (LexisNexis 2019).

district court's subsidiary legal determinations for correctness." *Id*.[5]

¶11    Ryan also challenges the court's dismissal of the Petition for failure to use dispute resolution procedures, contending the court erred by sua sponte determining that his failure to use dispute resolution procedures justified dismissal of the Petition. While district courts generally have inherent authority and discretion regarding the "manage[ment of] their own affairs so as to achieve the orderly and expeditious disposition of cases," *see PDC Consulting, Inc. v. Porter*, 2008 UT App 372, ¶ 14, 196 P.3d 626 (quotation simplified), to the extent this issue implicates the process afforded to Ryan, it is a legal question we consider under a correctness standard, *see Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 25, 156 P.3d 782.

---

5. We assume without deciding that rule 12(b)(6) applies in the context of a petition for modification of custody. The parties appear to believe that it does, and we have not been provided argument or authority to otherwise question this assumption. Similarly, we assume without deciding that correctness is the appropriate standard of review to apply to the district court's rule 12(b)(6) dismissal in this context. We note this seems to be a case "where deferential and correctness standards appear to intersect." *See Lindsey v. Lindsey*, 2017 UT App 38, ¶ 27, 392 P.3d 968. Although we review for correctness a dismissal under rule 12(b)(6), we review the "fact-intensive legal determination" of whether "substantial and material changes have occurred" for abuse of discretion. *See Doyle v. Doyle*, 2009 UT App 306, ¶ 15, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553; *see also Peeples v. Peeples*, 2019 UT App 207, ¶ 11, 456 P.3d 1159; *Huish v. Munro*, 2008 UT App 283, ¶ 19, 191 P.3d 1242. Nevertheless, the parties appear to agree that the court's dismissal of the Petition should be reviewed for correctness and do not argue that the ruling is entitled to deference.

ANALYSIS

¶12 The district court dismissed the Petition for failure to state a claim under rule 12(b)(6) of the Utah Rules of Civil Procedure. Ryan contends the court misapplied the dismissal standard under, and exceeded the scope of, the rule. He argues the court improperly "established facts" and "proceeded to the merits of [his] claims in reviewing his allegations of changed circumstances." Relatedly, Ryan contends the court erred by applying an incorrect standard for a petition to modify a divorce decree. Characterizing the Petition as requesting only a change in parent-time rather than a change of custody, he argues the court erred by applying the heightened changed-circumstances standard applicable to custody change requests.

¶13 Ryan also argues the district court erred by granting the motion to dismiss on the alternative ground that he had not utilized dispute resolution procedures in seeking modification of the decree.

¶14 We address each issue below, ultimately concluding the court erred in granting Brenda's motion for dismissal under rule 12(b)(6) for failure to state a claim and in sua sponte dismissing the Petition due to the parties' failure to engage in dispute resolution procedures.

I. Dismissal for Failure to State a Claim

A. Applicable Principles

¶15 "A complaint states a claim upon which relief can be granted if it alleges the facts and sets forth the legal basis for an available legal remedy." *Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 15, 335 P.3d 885 (quotation simplified). "A rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on

those facts." *Blanch v. Farrell*, 2018 UT App 172, ¶ 14, 436 P.3d 285 (quotation simplified). Our review of a rule 12(b)(6) dismissal is "concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." *Fehr v. Stockton*, 2018 UT App 136, ¶ 8, 427 P.3d 1190 (quotation simplified); *see also Capri Sunshine, LLC v. E & C Fox Invs., LLC*, 2015 UT App 231, ¶ 11, 366 P.3d 1214 ("The purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case." (quotation simplified)); *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 6, 314 P.3d 1079 (explaining that a rule 12(b)(6) review concerns the "legal sufficiency of the claim"). "We assume the truth of the factual allegations in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff." *Fehr*, 2018 UT App 136, ¶ 8 (quotation simplified). While courts "need not accept legal conclusions or opinion couched as facts," *Miller v. West Valley City*, 2017 UT App 65, ¶ 12, 397 P.3d 761 (quotation simplified), "[a] district court should grant a motion to dismiss only if it is clear from the allegations that the non-moving party would not be entitled to relief under the set of facts alleged or under any facts it could prove to support its claim," *O'Hearon v. Hansen*, 2017 UT App 214, ¶ 10, 409 P.3d 85; *see also Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 6, 387 P.3d 521 (stating that dismissal under rule 12(b)(6) "is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim" (quotation simplified)).

¶16    The Petition requested a change in primary custody. Modification of an order establishing joint physical or legal custody is governed by Utah Code section 30-3-10.4. It provides that upon petition by "one or both of the parents, . . . the court may, after a hearing, modify or terminate an order that established joint legal custody or joint physical custody if" "the verified petition or accompanying affidavit initially alleges that admissible evidence will show that the circumstances of the child

or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified" and that "a modification of the terms and conditions of the order would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(1)(a), (b) (LexisNexis 2019). This is a two-part test: the court "first must decide whether there are changed circumstances warranting the exercise of the court's continuing jurisdiction to reconsider the custody award," and it may then proceed to the best interest determination "only if circumstances have materially and substantially changed." *Erickson v. Erickson*, 2018 UT App 184, ¶ 14, 437 P.3d 370 (quotation simplified).

¶17 The change-in-circumstances inquiry is a threshold requirement for reopening a custody order. *Doyle v. Doyle*, 2011 UT 42, ¶ 25, 258 P.3d 553. It has two requirements: "the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Peeples v. Peeples*, 2019 UT App 207, ¶ 15, 456 P.3d 1159 (quoting *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982)). "Prohibiting a court from reopening the custody question until it has first made a threshold finding of substantially changed circumstances serves multiple interests." *Doyle*, 2011 UT 42, ¶ 25 (quotation simplified). "First, because a custody decree is predicated on a particular set of facts, that decree is *res judicata*," with the result that the changed-circumstances requirement "prevents an unnecessary drain on judicial resources by repetitive litigation of the same issue when the result would not be altered." *Id.* (quotation simplified). Second, the changed-circumstances requirement "protects the custodial parent from harassment by repeated litigation." *Id.* (quotation simplified). Finally, the requirement "protects the child from 'ping-pong' custody awards." *Id.* (quotation simplified); *see also Peeples*, 2019 UT App

207, ¶ 14 (noting the "important ends" served by the changed-circumstances requirement are avoiding "the deleterious effects of 'ping-pong' custody awards that subject children to ever-changing custody arrangements" and "prevent[ing] the undue burdening of the courts and the harassing of parties by repetitive actions" (quotation simplified)).

¶18 Our courts have recognized that "the change in circumstances required to justify a modification of a divorce decree varies with the type of modification sought." *Erickson*, 2018 UT App 184, ¶ 16 (quotation simplified). For example, when modifying parent-time (as opposed to custody), "the petitioner is required to make only *some* showing of a change in circumstances, which does not rise to the same level as the substantial and material showing required when a district court alters custody." *Id.* (quotation simplified); *see also Blocker v. Blocker*, 2017 UT App 10, ¶ 12, 391 P.3d 1051.

¶19 Further, "in some cases, a lesser showing of changed circumstances may support modifying a stipulated award than would be required to modify an adjudicated award," because "the res judicata policies underlying the changed-circumstances rule are at a particularly low ebb." *Peeples*, 2019 UT App 207, ¶ 15 (quotation simplified); *see also Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989); *Zavala v. Zavala*, 2016 UT App 6, ¶¶ 16–17, 366 P.3d 422.

¶20 Nevertheless, for custody changes, "[t]he required finding of a material and substantial change of circumstances is statutory," with the result that "[n]either this court nor the supreme court has purported to—or could—alter that requirement." *Zavala*, 2016 UT App 6, ¶ 16; *see also Peeples*, 2019 UT App 207, ¶ 13. As a result, although the changed-circumstances *showing* may differ depending on the case, "[i]f a custody award has already been entered, custody will not be re-examined absent a material and substantial change of

circumstances." *Zavala*, 2016 UT App 6, ¶ 16; *see also Peeples*, 2019 UT App 207, ¶ 15 (acknowledging "that the change-in-circumstances requirement still applies even in cases involving stipulated (as opposed to adjudicated) custody orders"). *See generally Doyle*, 2011 UT 42, ¶ 38 ("Even an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances.").

¶21 Applying these principles, we conclude the district court improperly applied the rule 12(b)(6) standard when it dismissed the Petition. As we discuss below, in evaluating the Petition, the court properly determined Ryan requested a change in custody rather than a change in parent-time. But although the court properly categorized the Petition as seeking a change in custody and recited the correct rule 12(b)(6) standard, the court exceeded the scope of that standard when it weighed the change-of-circumstances allegations on their merits instead of assuming their truth to determine whether the Petition "allege[d] that admissible evidence will show that the circumstances of the child or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified." *See* Utah Code Ann. § 30-3-10.4(1)(a); *see also Fehr*, 2018 UT App 136, ¶ 8. On this basis, we reverse the rule 12(b)(6) portion of the district court's dismissal order.

¶22 Because the court's application of rule 12(b)(6) depends on its determination that the Petition sought a change in custody rather than in parent-time, we first address Ryan's challenge to the court's custody standard determination, then address the court's rule 12(b)(6) application in light of the proper custody standard.

B. Custody Standard

¶23 Ryan contends the district court, in evaluating the Petition, improperly applied the heightened changed-circumstances

standard applicable to custody changes. He claims the Petition merely requested a change in parent-time and asserts the court erred by declining to apply the lesser changed-circumstances showing applicable to changes in parent-time.

¶24    The district court determined the standard applicable to modification requests for custody changes in Utah Code section 30-3-10.4(1) was the appropriate standard to apply, which required the Petition to allege "that admissible evidence will show that the circumstances of the child or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified." Utah Code Ann. § 30-3-10.4(1)(a) (LexisNexis 2019). In doing so, the court noted that Ryan's request was "the polar opposite" of the custody and parent-time arrangement in place under the decree. And ultimately it concluded, applying the standard articulated in section 30-3-10.4(1), that the allegations did not demonstrate "the circumstances of the children or one or both of the parents [had] *materially and substantially* changed since the entry" of the divorce decree. (Emphasis added.)

¶25    We perceive no error in the changed-circumstances standard the court applied. First, although the divorce decree granted the parties joint legal and physical custody, Brenda was designated as the "primary physical custodial parent," with Ryan awarded parent-time. The Petition plainly requested the court to award Ryan "primary custody" of the children, "with Brenda enjoying parent-time," and set forth a number of "substantial and material change[s] in circumstances" Ryan believed supported his request. Although on appeal Ryan characterizes his request merely as a change in parent-time, he nevertheless agrees that it asked to "mak[e] him the primary physical custodian."

¶26    In this respect, Ryan's request is more than merely a request to change parent-time. If the request were granted, Ryan would be deemed the primary custodial parent, with Brenda

receiving parent-time. This change would dramatically decrease the number of overnights the children would spend per year with Brenda while increasing them for Ryan. Among other things, Brenda's overnights would decrease from 220 per year to 145, and Ryan's would increase to 220. *See generally id.* § 30-3-35.1 (LexisNexis 2019) (setting forth the number of overnights and schedule applicable to parent-time). The change also would substantially disrupt and alter the children's routines, expectations, and time with Brenda attendant to her designation as the children's primary custodial parent since the 2014 decree. Additionally, the change could affect where the children attend school because the decree provided they would "attend school based upon [Brenda's] residence" as she was designated the primary custodial parent.

¶27    Thus, we do not agree with Ryan that his request is properly characterized merely as a change in parent-time; in substance, he has asked for an order to have the children's primary custodial parent changed.[6] We therefore conclude the court correctly applied the statutory changed-circumstances

---

6. Ryan cites *Blocker v. Blocker*, 2017 UT App 10, 391 P.3d 1051, and *Jones v. Jones*, 2016 UT App 94, 374 P.3d 45, as support for his contention that the district court applied the wrong standard where he requested only a change in parent-time. But he acknowledges he cites the cases "for their legal proposition" regarding the showing required to justify a change in parent-time, "not for their factual similarities to [his] case." And, indeed, it is apparent the modification requests in *Blocker* and *Jones* were for parent-time, not custody. *See Blocker*, 2017 UT App 10, ¶¶ 5–8, 11, 16 (changing mother's parent-time from supervised to unsupervised); *Jones*, 2016 UT App 94, ¶¶ 5–7, 10–11 (modifying the extent of mother's parent-time after she relocated closer to the children). Thus, neither case is helpful or applicable here.

standard applicable to custody modification requests under section 30-3-10.4—whether there has been a substantial and material change in circumstances justifying a modification of the divorce decree—as opposed to the lesser showing applicable to mere parent-time changes.[7]

¶28 In short, we perceive no error in the court's decision to apply to the Petition the standard applicable to custody change requests under Utah Code section 30-3-10.4(1).

C. Rule 12(b)(6) Standard

¶29 Ryan contends the district court erred by dismissing his Petition under rule 12(b)(6) of the Utah Rules of Civil Procedure. He argues it misapplied, and exceeded the scope of, rule 12(b)(6) in dismissing the Petition. We agree.

---

7. Ryan also briefly suggests the district court did not apply the "low ebb" standard applicable to evaluating petitions to modify stipulated custody orders. *See Peeples v. Peeples*, 2019 UT App 207, ¶ 15, 456 P.3d 1159 (explaining that "a lesser showing of changed circumstances may support modifying a stipulated award" because "the res judicata policies underlying the changed-circumstances rule are at a particularly low ebb" (quotation simplified)). We do not agree. The court explicitly determined that because the "original custody agreement was by way of stipulation" rather than adjudication, applying the "low ebb" standard to the Petition was appropriate. And apart from pointing out that the court "should have been looking for a lower showing of changed circumstances" given the stipulated nature of the decree, Ryan has not otherwise demonstrated that, despite the court's determination, it failed to apply that standard in evaluating the Petition. Therefore, we are not persuaded the court erred by failing to apply the "low ebb" changed-circumstances standard generally applicable to stipulated custody orders.

¶30 Rule 12(b)(6) permits a party to move for dismissal of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). This means that, even accepting the complaint's allegations as true, "it is clear . . . that the non-moving party would not be entitled to relief under the set of facts alleged or under any facts it could prove to support its claim." *O'Hearon v. Hansen*, 2017 UT App 214, ¶ 10, 409 P.3d 85; *see also Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 6, 387 P.3d 521 (stating that dismissal under rule 12(b)(6) "is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim" (quotation simplified)).

¶31 The Petition sought a change in the parties' custody arrangement. *See supra* ¶¶ 23–28. As discussed above, in the context of petitions to modify custody orders, the allegations must demonstrate "that admissible evidence will show that the circumstances of the child or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified." Utah Code Ann. § 30-3-10.4(1)(a) (LexisNexis 2019). To meet the changed-circumstances requirement, the Petition thus had to include allegations demonstrating "(1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Peeples v. Peeples*, 2019 UT App 207, ¶ 15, 456 P.3d 1159 (quoting *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982)).

¶32 Here, the district court articulated the correct legal standard, but ultimately misapplied it. It recognized its duty "to review [the changed-circumstances allegations] of the Petition . . . and to take those alleged facts at face value and any inferences that can be drawn from them in favor of the non-moving party" to determine whether the Petition stated a claim for modifying the custody order. And the court recited the appropriate standard in

reaching its conclusion that Ryan had "not supported the allegation that admissible evidence will show that the circumstances of the children or one or both of the parents have materially and substantially changed since the entry of the order to be modified," stating it reached its conclusion by "taking all allegations together and considering them in the light most favorable to [Ryan]."[8]

¶33　But in reaching that conclusion, the court acknowledged that most of the Petition's allegations "could support some change" and thereby constituted appropriate considerations for evaluating a custody change. Nevertheless, the court discounted those allegations in conducting its analysis of the changes. The court determined that, for various reasons, many of the Petition's allegations were entitled to little weight. For example, it determined that allegations about Brenda's failure to communicate, failure to allow the children to attend "significant events," allowance of constant screen-time, and neglect were entitled to "little weight" in the overall substantial and material change analysis. Similarly, the court determined that several of the allegations, including the homework-related, cohabitation, and medication-regime allegations, were "of less value" in the

---

8. Ryan seems to challenge the district court's consideration of his allegations *as a whole* to determine whether there had been a substantial and material change in circumstances. But the court committed no error in evaluating the Petition and its allegations as a whole in determining whether to grant Brenda's motion to dismiss. *See, e.g.*, *Edwards v. Carey*, 2017 UT App 73, ¶ 19, 397 P.3d 797 (explaining that a complaint is to be read and construed as a whole (citing *Geros v. Harries*, 236 P. 220, 222 (Utah 1925))); *McNair v. State*, 2014 UT App 127, ¶ 14, 328 P.3d 874 (same); *Mower v. Simpson*, 2012 UT App 149, ¶¶ 24–25, 278 P.3d 1076 (explaining that dismissal of a claim should not occur "without an analysis of the claim as a whole").

substantial and material change analysis as the result of Ryan's failure to engage in alternative dispute resolution and enforcement proceedings before bringing the Petition. And for certain allegations, including those regarding screen-time and Brenda's cohabitation, the court acknowledged that it needed more facts to properly analyze the weight and consideration to be afforded them in the overall change-of-circumstances analysis, yet it also discounted the allegations for that reason.

¶34 By analyzing the weight and value of the allegations as well as the necessity of more facts, the court proceeded past the proper rule 12(b)(6) question—whether the Petition stated a legally sufficient claim for a substantial and material change in circumstances—to the merits-related questions of whether the various allegations actually constituted a material and substantial change in circumstances. *See Fehr v. Stockton*, 2018 UT App 136, ¶ 8, 427 P.3d 1190 (stating that a rule 12(b)(6) inquiry is "concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case" (quotation simplified)). Doing so was error.

¶35 To be sure, the determination of whether allegations of changed circumstances amount to a material and substantial change is a legal one. *See Huish v. Munro*, 2008 UT App 283, ¶ 19, 191 P.3d 1242 (characterizing a court's conclusion about "whether a material change in circumstances has occurred that would warrant reconsidering the original decree" as a "legal conclusion" (quotation simplified)); *Hudema v. Carpenter*, 1999 UT App 290, ¶ 21, 989 P.2d 491 (same). As a result, if changed-circumstances allegations clearly raise only circumstances that our courts have already determined to be insufficient to justify modification of a divorce decree as a matter of law, a district court may dismiss a modification petition as failing to state a legally sufficient claim. *See generally O'Hearon*, 2017 UT App 214, ¶ 10 (stating a motion to dismiss should be granted "only if it is clear from the allegations that the non-moving party would not be entitled to relief under

the set of facts alleged or under any facts it could prove to support its claim"); *cf. Peeples*, 2019 UT App 207, ¶¶ 25, 27 (stating "[i]ssues that were present prior to the decree, and continue to be present in much the same way thereafter," as well as "violations of a custody order by one party," ordinarily do not "justify reexamining the propriety of the [custody] order"); *Kelley v. Kelley*, 2000 UT App 236, ¶ 22, 9 P.3d 171 (concluding "remarriage and/or failure to make support payments cannot alone justify a modification" of a divorce decree). Likewise, if a court determines a petition as a whole clearly does not allege a change in circumstances that has any relation to the parenting skills or custodial relationship or the circumstances on which the custodial arrangement was based, it may dismiss the petition for failure to state a claim. *See O'Hearon*, 2017 UT App 214, ¶ 10; *cf. Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984) (stating that, to meet the materiality requirement, the change in circumstances must "have some material relationship to and substantial effect on parenting ability or the functioning of the presently existing custodial relationship" or "appear on their face to be the kind of circumstances on which an earlier custody decision was based").

¶36    But because a determination of whether "substantial and material changes have occurred is a fact-intensive legal determination," *see Doyle v. Doyle*, 2009 UT App 306, ¶ 15, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553, a decision that a modification petition may be dismissed as legally insufficient under rule 12(b)(6) will be unusual. Here, the court expressly found that most of the allegations were appropriate considerations for a change-of-circumstances analysis and potentially could have supported a change of custody. In doing so, the court necessarily determined the allegations suggested that "admissible evidence will show that the circumstances of the child or one or both parents or joint legal or physical custodians have materially and substantially changed since the entry of the order to be modified." *See* Utah Code Ann. § 30-3-10.4(1)(a). Once it made such a

determination, the court's task under rule 12(b)(6) was at an end. *See Fehr*, 2018 UT App 136, ¶ 8. It was improper for the court to proceed beyond the question of sufficiency of the pleadings to merits-related questions of how much weight, value, or type of consideration to give to certain allegations in the overall changed-circumstances analysis, particularly in light of the court's acknowledgement that more facts were needed regarding some of the allegations for it to make that assessment in the first place. *See id.*

¶37    For these reasons, we conclude the district court erred in dismissing the Petition for failure to state a claim under rule 12(b)(6). The court exceeded the scope of a proper rule 12(b)(6) inquiry in dismissing the Petition. Accordingly, we reverse the rule 12(b)(6) portion of the court's dismissal of the Petition.

## II. Dismissal for Failure to Use Dispute Resolution Procedures

¶38    Ryan also challenges the district court's alternative ground for dismissal because of his failure to use dispute resolution procedures, arguing the court exceeded its discretion to dismiss the Petition on this ground. He contends the court erred by sua sponte raising the dispute resolution procedure issue and then ruling on it as an alternative ground for dismissal. He points out that Brenda's motion to dismiss "did not raise the issue of the alternate dispute resolution requirement" as a ground for dismissal, and he asserts the parties "had no knowledge the issue was being considered" by the court as a ground for dismissal until the hearing. On this basis, he contends the court erred by dismissing the Petition on this ground without allowing the parties to "fully brief the issue." We agree.

¶39    Our supreme court has explained that Utah's "appellate system has developed along the adversarial model, which is founded on the premise that parties are in the best position to select and argue the issues most advantageous to themselves,

while allowing an impartial tribunal to determine the merits of those arguments." *State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443. In this respect, as a general rule, "all parties are entitled to notice that a particular issue is being considered by a court and to an opportunity to present evidence and argument on that issue before decision." *Plumb v. State*, 809 P.2d 734, 743 (Utah 1990). "Sua sponte decisions by [district] courts are inconsistent with the notion of due process when parties are not provided advance notice that the court is considering a given course of action, and the losing party is not allowed to be heard thereon." *Jenkins v. Weis*, 868 P.2d 1374, 1383 (Utah Ct. App. 1994) (Bench, J., dissenting). In other words, "[t]imely and adequate notice and an opportunity to be heard in a meaningful way are the very heart of procedural fairness." *Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983); *see also Rubins v. Plummer*, 813 P.2d 778, 780 (Colo. App. 1990) ("The right to prior notice and an opportunity to be heard is a critical part of our judicial system." (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970))). And, as to sua sponte dismissals in particular, a court should "normally refrain" from doing so unless the deficiency or issue "is brought to its attention by way of pleadings or motions by the parties." *See Rubins*, 813 P.2d at 779. "[I]f the court is inclined to dismiss *sua sponte*, it must afford the plaintiff an opportunity to be heard" and to "persuade the court that dismissal is not proper" as a "matter of fundamental fairness, if not procedural due process." *Id.*

¶40 Here, Brenda's motion to dismiss did not raise the failure to use dispute resolution procedures in relation to the request to modify custody as a basis for failure to state a claim under rule 12(b)(6) or for dismissal on another basis; her motion sought dismissal only for failure to state that a material and substantial change had occurred, as required under Utah Code section 30-3-10.4(1)(a). Further, the relevant notice of hearing indicated the issue to be considered during the hearing was the motion to dismiss. *See generally In re Cannatella*, 2006 UT App 89, ¶ 3, 132

P.3d 684 ("To satisfy an essential requisite of procedural due process, a hearing must be prefaced by timely notice which adequately informs the parties of the specific issues they must prepare to meet." (quotation simplified)).

¶41    As a result, Ryan was first made aware during the hearing itself that the court was considering dismissal on the additional ground that he had failed to use dispute resolution procedures before seeking court intervention. The court raised the dispute resolution issue sua sponte at the hearing, and apparently in the context of determining whether Ryan had satisfied the requirements for modification of custody under section 30-3-10.4(1). And without allowing Ryan an opportunity to brief the issue, it announced its ruling from the bench at the end of the hearing and dismissed the Petition on the additional ground that the parties had not met the dispute resolution requirement.

¶42    In doing so, the court denied Ryan an adequate opportunity to prepare for and address the dispute resolution issue before it announced its dismissal on that ground. For example, had Ryan been made aware that the court was considering the dispute resolution issue in conjunction with Brenda's motion, he might have made an informed decision to forgo pursuing the Petition in favor of engaging in mediation or another dispute resolution procedure. In this respect, because of the court's sua sponte treatment of the issue, Ryan was not afforded the opportunity to prepare for and address, with authority, whether engaging in dispute resolution proceedings, as set out in section 30-3-10.4, is required to state a claim for modification of custody or is otherwise required in every case before court intervention is sought. *Cf. In re Adoption of B.Y.*, 2015 UT 67, ¶ 23, 356 P.3d 1215 ("Mere notice is an empty gesture if it is not accompanied by a meaningful chance to make your case."). This denial of a briefing opportunity in light of the court's sua sponte dismissal was significant where the court's decision to dismiss on this ground appears to have been rooted in the court's

belief that engaging in a dispute resolution procedure is a prerequisite, under section 30-3-10.4, to filing a petition to modify custody. Relatedly, the court's sua sponte consideration and ruling on the dispute resolution issue denied Ryan an opportunity to prepare for and address whether, given the particular nature of the allegations allegedly justifying a modification of custody and the terms of the parties' parenting plan, the failure to engage in dispute resolution procedures before seeking court intervention was insufficient to justify the Petition's dismissal.

¶43    Indeed, as Ryan has pointed out on appeal, there were some important questions raised by the court's sua sponte treatment of the issue, including whether compliance with a dispute resolution procedure is required to state a claim for modification of custody or whether use of a dispute resolution procedure was required under the circumstances and in light of the allegations in this case. Because the court both sua sponte raised the issue for the first time and then rendered dismissal on it during the hearing, Ryan was denied an opportunity to research authority and consider, prepare for, and respond to these and other related issues. *See In re Cannatella*, 2006 UT App 89, ¶ 3.

¶44    For these reasons, the court's sua sponte consideration of and dismissal based on the dispute resolution procedure issue, without affording Ryan the opportunity to research authority and prepare to address it, was error. In light of the lack of notice before the hearing that the court was considering dismissal for failure to engage in dispute resolution procedures and the complexity of the issues (as well as the variety of responses Ryan might have made had he been informed before the hearing that the court was evaluating the viability of the Petition on that ground), the court should not have dismissed on this ground before providing Ryan the opportunity to brief the issue. Accordingly, we reverse the court's dismissal on the alternative ground of failure to use a dispute resolution procedure.

CONCLUSION

¶45 The district court applied the proper changed-circumstances standard in evaluating the Petition. But it misapplied the rule 12(b)(6) standard in dismissing the Petition. The court also erred by dismissing the Petition for failure to use dispute resolution procedures before seeking court intervention. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

————